IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| TONY BARNES | | |
| | : | |
| Plaintiff | | |
| | : | Civil No. AW-09-CV-2507 |
| v. | | |
| | : | |
| MONTGOMERY COUNTY, | | |
| MARYLAND, et al. | : | |
| | | |
| Defendants | : | |

**MEMORANDUM OF GROUNDS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
COUNT VIII OF PLAINTIFF'S SECOND AMENDED COMPLAINT[1]**

Defendants, Montgomery County, Maryland, and Officer Ringo Lagos, by and through their

undersigned counsel, pursuant to Fed. R. Civ. P. 56, hereby move for summary judgment on Count

VIII of Plaintiff's Second Amended Complaint, insofar as there is no dispute of any material fact,

and Defendants Montgomery County and Officer Ringo Lagos are entitled to judgment as a matter

of law.

**I.      STATEMENT OF THE CASE**

On September 24, 2009, Plaintiff filed a six count Complaint against Defendants

Montgomery County, Maryland, and Montgomery County police officers Sandra Moss, Ringo

---

[1] As of the filing of this Motion for Summary Judgment on Count VIII of Plaintiff's Second Amended Complaint, Defendants' Motion for Partial Dismissal and/or Partial Summary Judgment of Plaintiff's First Amended Complaint, or in the Alternative, Motion for Bifurcation and Deferral of the *Monell* Claim and Discovery Relating Thereto is still pending. (Doc. No. 16.) This Court's ruling on the Motion at Doc. No. 16 would be equally applicable to Plaintiff's Second Amended Complaint containing the same counts and factual allegations. Plaintiff's Second Amended Complaint differs from his First Amended Complaint solely to the extent he has now added a claim for Abuse of Process. The Court is respectfully referred to the arguments contained in Doc. No. 16 as Defendants renew their Motion for Summary Judgment as to Plaintiff's Second Amended Complaint based on the same grounds.

Lagos, and Brandon Wyzga.  Plaintiff alleged personal injuries arising out of his arrest that occurred on or about June 17, 2008, in Montgomery Village, Maryland.

Plaintiff alleged violations of his federal civil rights under the Fourth and Fourteenth Amendments and state tort claims of assault and battery, false arrest, false imprisonment, and malicious prosecution.  On January 22, 2010, Defendants filed a Motion for Partial Dismissal which was granted on April 15, 2010.  The Court dismissed the claims against Montgomery County brought under 42 U.S.C. § 1983 because Plaintiff did not allege sufficient facts to support a *Monell*-type claim against the County.  Additionally, the Court dismissed claims under § 1983 against the County premised on allegations of constitutional torts by the individual police officers because there is no *respondeat superior* liability under 42 U.S.C. § 1983.  The Court also dismissed the state torts against Montgomery County because the County is afforded governmental immunity for governmental functions such as law enforcement.  Finally, the Court dismissed the assault claim against Officer Moss because Plaintiff failed to file his claim within the one year statute of limitations for assault.  Plaintiff was given leave to amend; thereafter, Plaintiff filed an Amended Complaint and Defendants filed another Motion for Partial Dismissal.  That Motion is still pending.

On November 9, 2010, Plaintiff filed a Second Amended Complaint which added a state tort claim for abuse of process against Officer Lagos and Montgomery County in Count VIII.

## II.    STATEMENT OF FACTS

On June 17, 2008, Plaintiff was outside a friend's apartment in Montgomery Village when Montgomery County police officers Brandon Wyzga and Ringo Lagos were dispatched to the address for a fight in progress.  (Second Amended Complaint ¶¶ 8, 9; Exhibit 1, Deposition of Officer Ringo Lagos, dated October 11, 2010, p. 6.)  Officer Lagos was then a 14-year veteran of the police force and was a patrol officer working in the sixth district.  (Ex. 1, p. 5-6.)  Officer

Brandon Wyzga had been on the force for less than a year and was driving a marked police cruiser with Officer Lagos in the passenger seat.  (Ex. 1, p. 6.)    In response to the 911 call that had reported a fight in progress, Officer Lagos looked up the history of the address and determined that police had been called to that address approximately 10 times in the previous three months. (Second Amended Complaint ¶ 10; Ex. 1, p. 7.)  Plaintiff alleges that when Officer Lagos arrived, no one in Plaintiff's group was fighting, but the officer testified that he observed Plaintiff on top of another individual and the two were physically fighting.   (Second Amended Complaint ¶ 11; Ex. 1, pp. 8, 15, 29.)    Plaintiff also had scrapes and cuts. (Ex. 1, pp. 8, 15, 45.)  A crowd of people from the apartment complex came out of their homes and additional police officers arrived.  The assembled crowd became antagonistic towards the officers.  (Second Amended Complaint ¶¶ 13-15; Ex. 1, pp. 8, 28.)  Plaintiff's vehicle was searched because Officer Lagos said he smelled marijuana and there were open containers of alcohol near the vehicle.  (Second Amended Complaint ¶ 17; Ex. 1, p. 46.)

Officer Lagos attempted to place Plaintiff in handcuffs, but Plaintiff resisted at which time Officer Sandra Moss tased him.  (Second Amended Complaint ¶¶ 20-21; Ex. 1, pp. 36, 39.) Plaintiff was then placed in handcuffs and arrested for disorderly conduct, resisting arrest, and second degree assault. (Second Amended Complaint ¶ 23.)  Officer Wyzga prepared the statement of charges against Plaintiff and presented it to a District Court Commissioner.  (Ex. 1, pp. 10, 25-26, 42-43; Exhibit 2, Statement of Charges.)  Prior to trial, the State dismissed the charge for second degree assault.  (Second Amended Complaint, ¶ 27.)  At trial, the court found that when the officers arrived at the address, they saw a fight in progress.  (Exhibit 3, Transcript of Trial dated September 12, 2008, p. 89.)  However, Plaintiff was acquitted of the charges of disorderly conduct and resisting arrest.  (Ex. 3, p. 93.)

### III.   STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Id.* at 252. Moreover, wholly speculative assertion will not suffice. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

Given the relevant and undisputed material facts, this Court should enter summary judgment as a matter of law in favor of Defendants Montgomery County and Officer Ringo Lagos on Count VIII of the Second Amended Complaint.

### IV.   ARGUMENT

#### A.   OFFICER LAGOS IS ENTITLED TO JUDGMENT ON PLAINTIFF'S ABUSE OF PROCESS CLAIM.

In the Second Amended Complaint, Plaintiff added a claim for abuse of process against Officer Ringo Lagos. Plaintiff contends that "criminal process was issued against Plaintiff in that Defendant Lagos arrested Plaintiff for second degree assault, disorderly conduct, and resisting arrest." (Second Amended Complaint, ¶ 95.) Plaintiff states that "Defendant Lagos initiated these

criminal proceedings against Plaintiff for a purpose other than that contemplated by the law;

namely, because the police had been dispatched to the 19820 Wheelwright Drive location

approximately ten times the previous three months, although Mr. Barnes was not the cause of any of

these previous calls to the address and that Mr. Barnes did not reside at the address."  (Second

Amended Complaint ¶¶ 10, 96.)   Plaintiff cannot support an abuse of process claim against Officer

Lagos because Officer Lagos did not institute charges against Plaintiff, and Plaintiff has put forth no

evidence to support a claim for abuse of process.

"Process," as used by the Maryland courts and the Maryland Rules, refers to "any written

order issued by a court to secure compliance with its commands or to require action by any person

and includes a summons, subpoena, an order of publication, a commission or other writ."  Maryland

Rule 1-202(v).  And "criminal process" is defined as "a process (such as an arrest warrant) that

issues to compel a person to answer for a crime."  *Black's Law Dictionary* 1010 (8th ed. 2005).  The

Maryland Civil Pattern Jury Instructions state that "abuse of process takes place when a person

willfully uses a criminal or civil proceeding against another person for a purpose different from the

proceeding's intended purpose…."  MPJI-Cv 17:8.  When the "process" is carried out to its

authorized conclusion, no cause of action for abuse of process exists.  *See Humphrey v. Herridge*,

103 Md. App. 238, 245, 653 A.2d 491 (1995) (no abuse of process occurred because the process

was not used for any purpose other than the normal one of obtaining satisfaction of a judgment).

Abuse of process is not dependent on whether there was a showing of lack of probable cause or

whether the proceeding terminated in favor of plaintiff.  *See Walker v. American Security Co.,* 237

Md. 80, 87, 205 A.2d 302 (1964).

Maryland courts have held that the tort of abuse of process occurs "when a party has

willfully misused criminal or civil process after it has issued in order to obtain a result not

contemplated by law." *Thomas v. Gladstone*, 386 Md. 693, 701, 874 A.2d 434 (2005) (citations

omitted); *One Thousand Fleet Ltd. Ptship v. Guerriero,* 346 Md. 29, 38, 694 A.2d 952 (1997);

*Krashes v. White*, 275 Md. 549, 555, 341 A.2d 798 (1975); *James v. Goldberg*, 256 Md. 520, 530,

261 A.2d 753 (1970); *Walker v. American Security Co.*, 237 Md. 80, 87, 205 A.2d 302 (1964);

*Bartlett v. Christhilf*, 69 Md. 219, 229, 14 A. 518 (1888); *Herring v. Citizens Bank & T. Co.*, 21

Md. App. 517, 529, 321 A.2d 182 (1974).  According to *Prosser and Keeton on the Law of Torts*, §

121, 898 (5th ed. 1984): "The essential elements of the abuse of process, as the tort has developed,

have been stated to be: first, an ulterior purpose, and second, a wilful act in the use of the process

not proper in the regular conduct of the proceeding." The second element of the tort requires:

> Some definite act or threat not authorized by the process, or aimed at an
> objective not legitimate in the use of the process, is required; and there is no
> liability where the defendant has done nothing more than carry out the
> process to its authorized conclusion, even though with bad intentions. The
> improper purpose usually takes the form of coercion to obtain a collateral
> advantage, not properly involved in the proceeding itself, such as the
> surrender of property or the payment of money, by the use of the process as
> a threat or a club. There is, in other words, a form of extortion, and it is
> what is done in the course of negotiation, rather than the issuance or any
> formal use of the process itself, which constitutes the tort.

*Id.*

In *Wood v. Palmer Food,* 47 Md. App. 692, 425 A.2d 671 (1981),[2] the court considered

---

[2]   This case, which began in 1978, had a long and tortured journey through all levels of the Maryland
judicial system. Initially, Palmer Ford brought criminal charges against Wood which were terminated in
Wood's favor in the District Court of Maryland. Wood then sought damages from Palmer Ford for malicious
prosecution and abuse of process in a civil case in the circuit court. Prior to trial, Palmer Ford's motion for
summary judgment was granted on both claims. The Court of Special Appeals reversed, *Wood v. Palmer
Ford, Inc.,* 47 Md. App. 692, 425 A.2d 671 (1981), and remanded the case for trial.  The jury then found for
Wood on both counts and awarded compensatory and punitive damages. The trial court granted a remitter
and the Court of Special Appeals affirmed in an unreported opinion. The Court of Appeals granted certiorari,
reversed as to the malicious prosecution claim and a new trial was held on the allocation of damages for the
abuse of process claim. *Palmer Ford, Inc. v. Wood,* 298 Md. 484, 511, 471 A.2d 297 (1984).  The second
trial ended in a mistrial; the third resulted in a jury verdict in favor of Wood for compensatory and punitive
damages.  Palmer Ford appealed.  The Court of Special Appeals, 65 Md. App. 390, 500 A.2d 1055 (1985),
affirmed the compensatory damages awarded on the abuse of process claim but reversed on the punitive
damages.

whether the Palmer Ford's action in having Wood arrested, and subsequently threatening Wood with jail time if a debt for car repairs was not paid, satisfied the elements of the tort of abuse of process.  The court found that Palmer Ford committed a "definite act or threat not authorized by the [criminal] process" when it used the criminal proceeding for a collateral source—to effect collection of the amount it claimed it was owed for repairs to Wood's car.  *Id.* at 706.  Palmer Ford presented an ultimatum—either pay the bill or Wood would go to jail. The tort of abuse of process was established because there was evidence to support a finding that, after criminal process had been instituted against Wood, i.e. his arrest, Palmer Ford subsequently used the threat of continuing that criminal action as a coercive tactic to collect a civil debt.  There was some "improper use of the process in a manner not contemplated by law, after process [had] been issued . . . ."  *Id.* at 705.

In *Savage v. Mayor of Salisbury*, 2010 U.S. Dist. LEXIS 77261 (D. Md. July 30, 2010), this Court considered an abuse of process claim brought against police officers.  Savage alleged that he had two violent encounters with the police which required hospitalization and resulted in his arrest. After his first arrest, the court suppressed evidence of crack cocaine due to lack of probable cause and a jury acquitted him of assault charges against the officers.  In the second arrest, the court found a lack of probable cause, and Savage was acquitted of charges of trespassing.  Savage then brought a civil action against the officers which included abuse of process.

The Court determined that the abuse of process claim was not supported by the evidence. Although Savage ascribed "bad motives" to the police officers, the Court found that Savage had not "explained or included any evidence as to how the officers used process after it was issued for an illegitimate purpose."  *Id*. at *21.  "As an abuse of process claim requires more than 'bad motive alone,' this claim must fail."  *Id.*

Here, Plaintiff alleges that Officer Ringo Lagos initiated the criminal process by arresting

Plaintiff for assault, disorderly conduct, and resisting arrest simply because the police had been

called to the same location approximately ten times in the previous three months.  (Second

Amended Complaint, ¶¶ 95-96.)  As such, Plaintiff concludes that Officer Lagos had "bad motives"

for arresting him.  The following exchange took place at Officer Lagos' deposition:

> Q.    Now, you mentioned previously that you had identified ten
>       separate calls to this residence prior to the evening at issue
>       here.
>
> A.    Yes, sir.
>
> Q.    Okay. Now, that played a role in your decision to arrest Mr.
>       Barnes, didn't it?
>
> A.    Yes.
>
> Q.    Okay.  Why did you decide that these prior incidents
>       warranted arresting Mr. Barnes?
>
> A.    Well, in responding to there, obviously the citizens there in
>       that particular community had called about this address ten
>       times.  And it was still ongoing, the problems thereabout.
>       So in my mind to basically safeguard the community… if
>       someone is doing something wrong …, such as we were
>       dispatched there for a fight in progress. And then as I'm
>       rolling up to actually see that, where these two individuals
>       are actually assaulting one another and committing the
>       crime of assault. They're loud. They're cursing at one another.
>       They're breaching the peace.  It was in my mind quite
>       obvious that those two were guilty of those infractions and
>       could be arrested for it.

(Ex. 1, pp. 53-54.)

First, Officer Lagos arrested Plaintiff because the officer saw Plaintiff involved in a fight,

was disorderly, and resisted arrest.  It would be a stretch to consider the above deposition exchange

to indicate a bad motive on the part of Officer Lagos.  In any event, a "bad motive" would not

support an abuse of process claim.   "As an abuse of process claim requires more than 'bad motive alone,' this claim must fail."  *Savage* at *21.

Second, criminal process was issued by way of a Statement of Charges and Statement of Probable Cause issued by Defendant Wyzga after the arrest by Officer Lagos.  (Ex. 2.)  In order for Plaintiff to sustain an abuse of process claim against Officer Lagos, Plaintiff would have to plead facts to support that, underline subsequent to the issue of process by Officer Wyzga, Officer Lagos used the criminal process in some way to threaten or coerce Plaintiff for some collateral reason.  Plaintiff's Second Amended Complaint does not allege any facts to support that Officer Lagos acted in any such manner.  To the contrary, Plaintiff's Second Amended Complaint alleges that Officer Lagos is liable for abuse of process because, before Plaintiff's arrest, "Officer Lagos determined that police had been called to that address approximately 10 times in the previous three months." (Second Amended Complaint, ¶ 10.)  Officers Lagos' determination was neither collateral, nor was Plaintiff's arrest improper in that Officer Lagos observed Plaintiff and others engaged in a fight upon arrival on the scene.  Officer Lagos put Plaintiff in handcuffs and arrested him; Officer Wyzga filed a statement of charges against him.  At trial, the court found that when the officers arrived at the address, they saw a fight in progress (Ex. 3, p. 89), but Plaintiff was acquitted of the charges of disorderly conduct and resisting arrest.[3]  Officer Lagos did nothing, either before or after the institution of process, that was threatening or coercive for a collateral purpose or otherwise, and the process was duly carried out to its authorized conclusion—the criminal trial.  All Officer Lagos did was make an arrest.  Plaintiff has presented no facts to show how the criminal process was used for any purpose other than to obtain a result contemplated by law.

It goes without saying that, pursuant to Maryland law, Plaintiff has failed to demonstrate how process was used in some abnormal fashion to coerce or extort money or property from him.

---

[3]  Prior to trial, the State dismissed the second degree assault charge.  (Second Amended Complaint, ¶ 27.)

As explained by Professors Prosser and Keeton, "if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such grounds to extort payment of a debt, it is abuse of process." *Prosser and Keeton on the Law of Torts* § 121, 897-98 (5th ed. 1984).  There is no evidence that Officer Lagos made any threats or engaged in any coercion or extortion.  Plaintiff has offered no evidence to support a claim for abuse of process under Maryland law.  Officer Lagos is entitled to judgment in his favor on Count VIII of Plaintiff's Second Amended Complaint.

### B.  MONTGOMERY COUNTY IS ENTITLED TO DISMISSAL OF THE STATE TORT CLAIM IN COUNT VIII.

In the claim for abuse of process in the Second Amended Complaint, Plaintiff contends that "criminal process was issued against Plaintiff in that Defendant Lagos arrested Plaintiff for second degree assault, disorderly conduct, and resisting arrest."  (Second Amended Complaint, ¶ 95.)  Plaintiff then alleges that Officer Lagos was acting as a police officer for Montgomery County and that the County is vicariously liable for the damages resulting from the officer's actions.  (Second Amended Complaint, ¶ 99.)   In addition to Plaintiff having failed to present any evidence to support a claim of abuse of process against Officer Lagos, Montgomery County is entitled to judgment on the claim because the County has governmental immunity for governmental functions.

This Court has previously dismissed the state tort claims of assault, battery, false arrest, false imprisonment, and malicious prosecution brought against Montgomery County.  (Memorandum Opinion of April 15, 2010, Paper No. 12.)  In fact, prior to the Court's ruling, Plaintiff conceded to the dismissal of those claims.  Now Plaintiff has brought a new state tort claim against the County and it should suffer the same fate for the very same reasons the initial claims failed.

Under Maryland law, Montgomery County is accorded governmental immunity from state tort law claims arising from the performance of a police officer's duties while in the exercise of a

governmental function.  In other words, there is neither direct nor *respondeat superior* liability on the part of Montgomery County simply because the alleged tortious conduct was committed by its police officers within the scope of their duties.  *Wynkoop v. Hagerstown*, 159 Md. 194, 200-01, 150 A. 447 (1930).

It is well-established in Maryland that a municipality, such as Montgomery County, is entitled to governmental immunity from state tort claims arising out of activities that are governmental in nature.  *Tadjer v. Montgomery County*, 300 Md. 539, 547, 479 A.2d 1321 (1984).  Activities that are solely for the public benefit and welfare and have no element of private interest or municipal profit are considered governmental activities.  *See Eyring & Sons Co. v. City of Baltimore*, 253 Md. 380, 382-83, 252 A.2d 824 (1969).  This governmental immunity cannot be waived by the County unless a waiver is pursuant to an express statutory procedure.  *Annapolis Urban Renewal Authority v. Interlink, Inc.*, 43 Md. App. 286, 297, 405 A.2d 313 (1979) (citations omitted).  As the Maryland courts have already recognized, Montgomery County has not waived its tort immunity from suit.  *Tadjer v. Montgomery County*, 300 Md. 539, 546, 479 A.2d at 1324; *Khawaja v. Mayor and City Council, City of Rockville*, 89 Md. App. 314, 326, 598 A.2d 498 (1991).

Consequently, as to many types of ordinary tort actions, Defendant Montgomery County is immune with regard to matters classified as governmental.  *Tadjer v. Montgomery County*, 300 Md. at 546; *Austin v. City of Baltimore*, 286 Md. 51, 55-56, 405 A.2d 255 (1979) (and cases cited therein).  *See also Buffington v. Baltimore County, Maryland*, 913 F.2d 113, 125, (4th Cir. 1990), *cert. denied*, 499 U.S. 906 (1991) (recognizing governmental immunity for governmental functions).  Police activity has been classified as governmental and not proprietary.  *See Cox v.*

*Prince George's County*, 296 Md. 162, 166-67, 460 A.2d 1038 (1983); *Quecedo v. Montgomery County*, 264 Md. 590, 597, 287 A.2d 257 (1972); *Wynkoop v. Hagerstown, supra* at 201.

In *Quecedo v. Montgomery County, supra*, the Maryland Court of Appeals relied upon its decision in *Wynkoop* and held that Montgomery County could not be sued for acts of its police officers in effecting an arrest.  The court recognized that Maryland law does not acknowledge either the direct or vicarious liability of a municipality for the actions of its police officers.

In this case, Plaintiff has brought a new action against Montgomery County Police Officer Ringo Lagos for abuse of process, and Plaintiff alleges that Officer Lagos was acting as a Montgomery County police officer at the time this tort was allegedly committed. Given that Plaintiff alleges that Officer Lagos was acting within the scope of his duties as a police officer, under the case law, Officer Lagos was performing a quintessential governmental function. Therefore, while Plaintiff alleges that "[t]he County is vicariously liable for the damage to Plaintiff resulting from [the officer's] actions," the law holds otherwise.  It is disingenuous for Plaintiff to bring this claim when the Court has previously dismissed the state torts brought against the County, and Plaintiff has previously acknowledged that the County cannot be held liable for those torts.

As the cases discussed above demonstrate, Defendant Montgomery County enjoys governmental immunity from suit for the alleged tortious acts attributable to its police officers. Consequently, Montgomery County is entitled to judgment on Plaintiff's state tort claim of abuse of process in Count VIII of the Second Amended Complaint.

WHEREFORE, Defendants request that judgment be entered in favor of Defendants Officer Ringo Lagos and Montgomery County on Count VIII of Plaintiff's Second Amended Complaint.

Respectfully submitted,

MARC P. HANSEN
COUNTY ATTORNEY

12

_____/s/_____
Patricia P. Via
Chief, Division of Litigation - Self-
Insurance
Federal Bar No. 04829
Patricia.Via@montgomerycountymd.gov
(signed by Christine M. Collins. with the
permission of Patricia P. Via)



_____/s/_____
Christine M. Collins
Associate County Attorney
Bar No. 14345
Christine.Collins@montgomerycountymd.gov

Attorneys for Defendants
101 Monroe Street, Third Floor
Rockville, Maryland 20850
(240) 777-6700
(240) 777-6705 -facsimile


Filed:  February 7, 2011


M:\Cycom\Wpdocs\D004\P012\00176651.DOC
Memorandum in Support of MSJ-Count VIII