**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

TONY BARNES,

       Plaintiff,

       vs.                     Civil Action No.   AW-09-2507

MONTGOMERY COUNTY,
MARYLAND, *et al.*,

       Defendants.

\* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

Pending before the Court is Defendant Montgomery County, Maryland and Officer Ringo Lagos' Motion for Summary Judgment on Count VIII of Plaintiff's Second Amended Complaint for Abuse of Process. (Doc. No. 46). Plaintiff has filed a cross motion for summary judgment based on his common law claims for false arrest, false imprisonment, and malicious prosecution. (Doc. No. 48). Plaintiff has also moved for summary judgment based on his claims for false arrest, false imprisonment, and malicious prosecution brought under 42 U.S.C. §1983. Additionally, Plaintiff moves for summary judgment on his claims for false arrest, false imprisonment, and malicious prosecution brought under Articles 24 and 26 of the Maryland Declaration of Rights. Finally, Plaintiff moves for summary judgment on Count VI of the Second Amended Complaint for battery. The parties have fully briefed the pending motions, and the Court finds that no hearing is necessary. For the reasons stated herein, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Cross Motion for Summary Judgment.

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Tony Barnes ("Barnes" or "Plaintiff") alleges that he was outside of a friend's apartment on June 17, 2008, when Officer Ringo Lagos ("Officer Lagos") was dispatched in response to a report that a fight was in progress. Upon Officer Lagos' arrival, no one in Plaintiff's group was fighting; however, Officer Lagos ordered Plaintiff and others to sit on the sidewalk.[1] Meanwhile, a crowd gathered and additional officers arrived at the scene, including Officer Sandra Moss ("Officer Moss") and Brandon Wyzga ("Officer Wyzga"). At some point the crowd "became antagonistic towards the officers."

Officer Lagos searched Plaintiff's car after alleging that he smelled marijuana and observed open containers of alcohol near the vehicle, despite Plaintiff's protestation that the containers were not his. Officer Lagos did not find marijuana in the car. At that point, Plaintiff claims that Officer Lagos "lifted [him] up from the ground and handcuffed one of his wrists." As Plaintiff had one wrist in handcuffs, he alleges that Officer Sandra Moss tasered him once. Officer Lagos then allegedly dropped Plaintiff to the ground, handcuffed his other wrist and Officer Moss then proceeded to taser Plaintiff an additional three to four times. Plaintiff was arrested for disorderly conduct, resisting arrest, and second degree assault. Plaintiff was then detained in jail for two days and received hospital treatment for injuries sustained from being tasered. Moreover, Plaintiff claims that he was fired from his job after his arrest. Prior to the trial on Plaintiff's charges, the state dismissed the second degree assault charge, and at the trail, the state court granted Plaintiff's motion for judgment of acquittal on both the disorderly conduct[2] and resisting arrest[3] charges.

---

[1] Although not clear from the record, it appears that Officer Lago was responding to call that Plaintiff and another individual were involved in an altercation.

[2] Plaintiff asserts that the court granted his motion on the disorderly conduct charge because the officers failed to identify why the crowd gathered or to determine the cause of the alleged altercation between Plaintiff and another individual.

[3] Plaintiff contends that the court determined that the resisting arrest charge could not stand because there was insufficient basis for arresting Plaintiff.

On September 24, 2009, Plaintiff filed his Complaint in the instant case, alleging a 42 U.S.C. §1983 claim for violations of his civil rights as protected under the Fourth and Fifth Amendments, as well as state tort claims of assault, battery, false arrest, false imprisonment, and malicious prosecution. Defendants filed a motion for partial dismissal of Plaintiff's Complaint on January 22, 2010. (Doc. No. 5). The Court granted this Motion on the grounds that Plaintiff's claim that the County had violated 42 U.S.C. §1983 by intentionally discriminating on the basis of race and by inadequately training officers was too broadly pled to demonstrate a cognizable claim against the County. (Doc. No. 12, at 6). The Court granted the Plaintiff leave to amend his Complaint within 10 days of the entry of the order granting Defendant's motion to dismiss. Plaintiff filed an Amended Complaint on April 26, 2010 (Doc. No. 14), alleging violations of §1983 (Counts I and II); malicious prosecution (Count II); false imprisonment (Count IV); false arrest (Count V); and violations of the Maryland Declaration of Rights.

Defendant filed a Motion for Partial Dismissal of Plaintiff's First Amended Complaint on May 6, 2010 (Doc. No. 16). On March 15, 2011, the Court granted Defendant's Motion for Partial Dismissal, without prejudice, leaving Plaintiff the right to reassert his *Monell* claim against Montgomery County on the condition that Plaintiff prevailed against the individually named defendants in this matter. (Doc. No. 52). Before the Court issued its ruling on the Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff filed a Second Amended Complaint on November 9, 2010. (Doc. No. 36). While Defendants' Motion to Dismiss Plaintiff's First Amended Complaint was still pending, Defendants filed a Motion for Summary Judgment, seeking judgment on Count VIII of Plaintiff's Second Amended Complaint for Abuse of Process (Doc. No. 46).

Plaintiff filed a Cross Motion for Summary Judgment on February 24, 2011, seeking Summary Judgment on his common law claims for false arrest, false imprisonment, and malicious prosecution. (Doc. No. 48). Plaintiff has also moved for summary judgment based on his claims for false arrest, false imprisonment, and malicious prosecution brought under 42 U.S.C. §1983. Additionally, Plaintiff moved for summary judgment on his claims for false arrest, false imprisonment, and malicious prosecution brought under Articles 24 and 26 of the Maryland Declaration of Rights. Finally, Plaintiff moved for summary judgment on Count VI of the Second Amended Complaint for battery.

### B. STANDARD OF REVIEW

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp. Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary

basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

## C. ANALYSIS

### a. Defendant's Motion for Summary Judgment

#### i. Abuse of Process Claim against Officer Ringo Lagos

Defendant Lagos moves for summary judgment on Count VIII of Plaintiff's Second Amended Complaint for Abuse of Process.   In Plaintiff's Second Amended Complaint, Plaintiff claims that "criminal process was issued against Plaintiff in that Defendant Lagos arrested Plaintiff for second degree assault, disorderly conduct, and resisting arrest." (Doc. No. 36, at ¶95).   Defendant Lagos moves for summary judgment on this count on the grounds that there is no dispute of material fact that Officer Lagos was not the officer that actually brought charges against the plaintiff, and plaintiff has failed to present evidence supporting an abuse of process claim.

In Plaintiff's Second Amended Complaint, Plaintiff argues that Defendant Lagos abused the criminal process because the sole reason he initiated criminal proceedings against the plaintiff was "because the police had been dispatched to the 19820 Wheelwright Drive location [the place Plaintiff was arrested] approximately 10 times the previous three months . . . ." (Doc. No. 36, ¶95).   In Defendant Lagos' deposition testimony, he concedes that he had indentified ten prior calls to the residence where Lagos was arrested, and these prior calls played a role in deciding to arrest the plaintiff.  (Doc. No. 46-1, at 8). However, in Defendant Lagos' disposition testimony, he explains that when he arrived at the scene of the arrest, he observed a fight in progress.  *Id.*[4]  Furthermore, Defendant articulated that he arrested Plaintiff to "safeguard the

---

[4] In his deposition, Defendant Lagos states,
Q. Okay. Why did you decide that these prior incidents

community." *Id.* Defendant claims that Plaintiff cannot support an abuse of process claim against Defendant Lagos based on the theory that Lagos had a "bad motive" in arresting the plaintiff, namely that Officer Lagos arrested Plaintiff because the police had received several calls regarding the location where Defendant Lagos found Plaintiff on the night in question. *Id.* (citing *Savage v. Mayor of Salisbury*, No.CCB-08-3200, 2010 WL 3038953 (D. Md. Jul. 30, 2010) for the proposition that "[a]n abuse of process claim requires more than 'bad motive alone.'"). Defendant further argues that Defendant Wyzga issued the criminal process via a Statement of Charges and Statement of Probable Cause after Defendant Wyzga arrested the plaintiff. (Doc. No. 46-1, at 9). According to Defendants, Plaintiff's abuse of process claim should fail because Plaintiff is required to show that after the issuance of process, Defendant Lagos abused the criminal process in some way that was detrimental to Plaintiff. Defendants argues that on the facts of this case, Plaintiff cannot demonstrate that that Defendant Lagos abused the criminal process *after* it was issued because Defendant Lagos witnessed the plaintiff engaged in a fight *before* the process (Statement of Charges) was ever issued. Accordingly, Defendants maintain that Defendant Lagos did nothing to abuse the process after it was issued.

Plaintiff counters Defendant Lagos' arguments by alleging that there are factual disputes as to whether Lagos actually observed Plaintiff in a fight with another individual. Plaintiff contends that several individuals have attested to the fact that the plaintiff and his alleged victim were not fighting at all, but instead, were "play wrestling" and that no punches were thrown.

---

warranted arresting Mr. Barnes?
A. Well, in responding to there, obviously the citizens there in that particular community had called about this address ten times. And it was still ongoing, the problems thereabout. So in my mind to basically safeguard the community… if someone is doing something wrong …, such as we were dispatched there for a fight in progress. And then as I'm rolling up to actually see that, where these two individuals are actually assaulting one another and committing the crime of assault. They're loud. They're cursing at one another. They're breaching the peace. It was in my mind quite obvious that those two were guilty of those infractions and could be arrested for it.

(Doc. No. 48, at 23). Furthermore, Plaintiff states that the wrestling between the plaintiff and Mr. Colbert ceased before Officer Lagos and Office Wyzga arrived at the scene of the arrest, and therefore, it was impossible for these officers to witness any altercation. *Id.*[5] Furthermore, Plaintiff attacks Defendants' argument that they are entitled to judgment on the abuse of process claim on the grounds that Maryland law does not require that a plaintiff demonstrate that a defendant abused process *after* it was issued. (Doc. No. 48, at 24).

Having reviewed the facts of this case in the light most favorable to Plaintiff, the Court finds that the defendants are entitled to summary judgment on Plaintiff's abuse of process claim. Maryland state courts and this Court have clearly articulated that "the essential elements of abuse of process are (1) an ulterior, and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Cottman v. Cottman*, 56 Md. App. 413, 430 (1983). *See also Attorney Grievance Com'n of Md. v. Roberts*, 394 Md. 137, 161 (2006) ("[A]buse of process requires 'a perversion of court process to accomplish some end which the process was not designed to accomplish; it does not arise from a regular use of process, even with ulterior motives.'") (quoting *Capitol Elec. Co. v. Christaldi*, 157 F. Supp. 646, 648 (D. Md. 1958)).

While case law seems to indicate that a plaintiff must demonstrate that the defendant acted in a manner contrary to the purpose for which the process was issued *after* the process was issued, even assuming *arguendo* that subsequent action is not a requirement to sustain this claim, the Court does not believe that Plaintiff has established an abuse of process claim on the facts of this case. Even if Defendant decided to arrest Plaintiff because the police had been called to the place where the Defendant was arrested multiple times within the past three months, there is no

---

[5] Plaintiff highlights that Officer Lagos' conflicting accounts about what he observed on the night in question raise doubts as to what the officer actually observed. According to Plaintiff, during the plaintiff and Colbert's criminal trial, Lagos testified that the fight he witnessed involved Colbert (who is black) and the Plaintiff. However, Plaintiff contends that in his interrogatory responses, Lagos asserted that Barnes and Justin Nicholson (who is white) were the persons involved in the altercation that Lagos observed on the night in question. Plaintiff argues that "[i]t is not plausible that Officer Lagos could have confused Mr. Colbert, who is Black, with Mr. Nicholson, who is white, raising serious doubts as to whether Officer Lagos actually observed this altercation as he claims." (Doc. No. 48, at 24).

indication from the pleadings that by arresting Plaintiff, Defendant Lagos was acting in a manner that diverged from the regular use of the criminal process that was eventually issued. It is clearly established that even if Lagos was acting pursuant to an ulterior motive, namely that Plaintiff was in a location with a history of criminal activity, and Defendant was exercising a bias against Plaintiff because of the location he was in, Lagos did not act contrary to the purpose for which the process was later issued—to quell an alleged act of violence that a community member had purportedly witnessed. Lagos' act in arresting the plaintiff, who was observed fighting by a community member (even if play fighting, by Plaintiff's account), renders Lagos' act of arresting Plaintiff a reasonable use of the process that was later issued and not outside of its intended purpose. Accordingly, the Court **GRANTS** Summary Judgment as to Defendant Lagos on Plaintiff's abuse of process claim.

### ii. State Tort Claim for Abuse of Process

Defendants move for summary judgment on Plaintiff's claim against Montgomery County for Abuse of Process. In Plaintiff's Second Amended Complaint, Plaintiff requests that the Court hold Montgomery County vicariously liable for the abuse of process that Defendant Lagos allegedly committed. (Doc. No. 36, ¶99). Defendants argue that Montgomery County is entitled to governmental immunity for this claim, as the officers who arrested the plaintiff were acting in accordance with a government function. (Doc. No. 46-1, at 10).

"Though counties in Maryland are immune, absent waiver, from suits based on actions taken in the exercise of their 'governmental' functions, they are not immune from suits alleging conduct in the exercise of 'proprietary' functions." *Buffington v. Baltimore County*, 913 F.2d 113, 125 (4th Cir. 1990). As Defendants point out, in the Plaintiff's response to Defendants' Motion to Dismiss, Plaintiff conceded that the County was immune from Plaintiff's common law

claims.[6]  In Plaintiff's response to the instant Motion for Summary Judgment, Plaintiff does not

address the fact that he previously conceded that Montgomery County was entitled to

governmental immunity on his common law claims.  Furthermore, Plaintiffs do not dispute that

the facts giving rise to Plaintiff's abuse of process claim against the county stem from the police

exercising a governmental function.  In light of Plaintiff's earlier concession, in conjunction with

the facts from the record supporting the argument that the defendant officers were carrying out a

governmental function when arresting Plaintiff, the Court believes that Defendant Montgomery

County is entitled to governmental immunity on Count VIII of the Amended Complaint.  As

such, summary judgment is **GRANTED** as to Montgomery County on the Abuse of Process

claim.

### b.  Plaintiff's Cross Motion for Summary Judgment

### i.  Common Law False Arrest and False Imprisonment Claims

### 1.  Assault and Battery

Plaintiff claims that he is entitled to summary judgment on his false arrest and false

imprisonment claims.  Plaintiff contends that his arrest for second degree assault and battery and

disorderly conduct was not legally justified.  Directing the Court to the legal elements necessary

to be guilty for the crime of assault, Plaintiff contends that a defendant must engage in an

"intentional, harmful, physical contact with the victim that is not legally justified." (Doc. No. 48,

at 6)(citing *Foy v. Giant Food, Inc.*, 298 F.3d 284, 290 (2002)).  Plaintiff avers that none of the

arresting officers in this case determined whether legal justification existed for the altercation in

which the plaintiff was engaged, as no one instituted any investigation regarding the cause of the

fight.  (Doc. No. 48, at 7).   As such, the plaintiff claims that because the police had insufficient

---

[6] In the plaintiff's response to the Defendants' Motion to Dismiss, Plaintiff states that he "acknowledges that the County is immune from Plaintiff's state common law claims . . . ." (Doc. No. 8, at 4).

information regarding the cause of the fight or whether the perceived altercation was a fight at all, the plaintiff's arrest for second degree assault was unjustified. Furthermore, Plaintiff argues that his arrest for disorderly conduct was legally unjustified on the grounds that if he had been defending himself from Mr. Colbert, his arrest would not have been justified. *Id.* at 8. Additionally, Plaintiff argues that Defendant Lagos testified at the plaintiff's criminal trial that no officer interviewed anyone in the crowd to ascertain whether they had congregated in response to the altercation between Colbert and the plaintiff.

Defendants allege that when they arrived at the scene of the altercation, they witnessed the Plaintiff on top of an individual, allegedly hitting this individual. (Doc. No. 54, at 8). Contrarily, Plaintiff asserts that witnesses dispute that punches were thrown and "instead, Mr. Barnes and Mr. Colbert were involved in playful wrestling." (Doc. No. 55, at 2). Moreover, Plaintiff maintains that in depositions, witnesses testified that the play fight between Plaintiff and Mr. Colbert had ended by the time that Officer Lagos and Officer Wyzga arrived at the scene of the alleged altercation. *Id.* As such, Plaintiff claims that Officer Lagos did not arrest him with legal justification, and he is entitled to summary judgment on his false arrest and false imprisonment claims.

In the case at bar, there is a genuine dispute of material fact as to whether the police had probable cause to arrest the plaintiff. There are a substantial number of material facts in dispute that cause the Court great hesitation in granting summary judgment to Plaintiff on his false arrest claim. "Probable cause is to be determined based upon evaluation of 'facts, viewed from the standpoint of an objectively reasonable officer,' and 'not on the officer's actual state of mind at the time the challenged action was taken. Therefore, the probable cause test is an objective one.'" *Wengert v. State*, 364 Md. 76, 90 (2001).

While there is no dispute that Officers Wyzga and Lagos were dispatched to the scene of the alleged fight based on a 911 call that reported that a fight was in progress, there is a dispute as to whether Officer Wyzga and Officer Lagos personally witnessed the apparent altercation between Plaintiff and his cohort and understood the nature of the perceived fight. The mere existence of these genuine disputes presents a sufficient basis for the Court to deny summary judgment to Plaintiff on his false arrest claim for assault and battery. The benefit of trial will illuminate the factual ambiguities surrounding whether the officers had probable cause to arrest the plaintiff for assault and battery. The Court will proceed to assess whether the plaintiff is entitled to summary judgment on his claim for false arrest for disorderly conduct.

## 2. Disorderly conduct

As an additional basis for his argument that he is entitled to summary judgment on his false arrest claim, Plaintiff argues that the police did not have legal justification to arrest the plaintiff for disorderly conduct. Plaintiff argues that in the event that he was defending himself or another individual, the police would not have had legal justification to arrest him for disorderly conduct. (Doc. No. 48, at 8). According to the plaintiff, the defendant officers failed to ascertain the cause for the altercation, and hence, they do not know whether Plaintiff was in fact defending himself or someone else. The Court does not find this argument persuasive, as nowhere in the pleadings does Plaintiff contend that he was in fact defending himself or someone else. In fact, Plaintiff argues that he was engaged in playful wrestling with Mr. Colbert. Therefore, the Court declines to accept Plaintiff's argument that he could have hypothetically been engaging in a legally justifiable act when Plaintiff's own account of the incident in question belies this hypothetical.

As a second basis for why he is entitled to summary judgment on his false arrest claim, Plaintiff asserts that the arresting officers failed to interview anyone in the crowd that had congregated around the altercation to determine whether these people had gathered in response to the altercation. *Id.* Defendant, however, argues that sufficient probable cause existed to arrest the plaintiff for disorderly conduct. According to Defendants, a community member, Maria Liriano, told the police that "she had come out her townhouse, prior to the arrival of the police, because of the noise outside, the people cursing, and observed the individuals 'fighting badly,' punching each other, engaged in 'serious' fighting." (Doc. No. 54, at 11). Moreover, the Officer Moss, an officer on the scene of the altercation allegedly testified during his deposition that "everybody was yelling," and that he heard the plaintiff yelling at his friends, attempting to invoke them to help him fight. *Id.*

In *Dziekonski v. State*, the Maryland Court of Special Appeals outlined the elements that the state must prove in order to convict a defendant on a charge for disorderly conduct, stating, "In order to convict the Defendant of the crime of Disorderly Conduct, the State must prove each element beyond a reasonable doubt. The four elements of Disorderly Conduct are:

> 1. The Defendant willfully acted in a disorderly manner to the disturbance of the public peace;
> 2. The Defendant did so in the actual presence of other persons;
> 3. Those other persons were disturbed or provoked to resentment; and
> 4. The Defendant did act disorderly in a public resort or amusement, a store during business hours or in any public building.

127 Md.App. 191, 198 (1999).

Assessing the facts before the Court in the light most favorable to Defendants, the non-moving party, the Court believes that a genuine dispute of material fact exists as to whether defendants had legal justification for arresting Plaintiff for disorderly conduct. There are sufficient factual allegations presented in the record to create a genuine dispute as to whether

police officers on the scene of the alleged crime had legal justification to charge and arrest plaintiff for disorderly conduct. As discussed above, Defendants have presented deposition testimony from Ms. Liriano and other officers on the scene which support their argument that the plaintiff was observed engaging in conduct which supports a disorderly conduct charge.

Finally, Plaintiff moves the Court to grant summary judgment to him on the grounds that the defendant is collaterally estopped from arguing that the plaintiff's arrest for disorderly conduct was legally justified. Plaintiff argues that the defendants are estopped from asserting that legal justification existed for the claim of disorderly conduct because they did not know what caused the crowd that Lagos observed before he arrested Plaintiff. (Doc. No. 48, at 9). The Court has already discussed this argument and finds Plaintiff's assertion unavailing. Furthermore, Plaintiff argues that defendants should be collaterally estopped from arguing that probable cause existed to arrest Mr. Barnes because in plaintiff's criminal trial, the Montgomery County District Court found that the officers were unsure of why the crowd had gathered in the complex where the plaintiff was arrested, and the officers were uncertain as to the cause of the altercation. *Id.* at 16. Plaintiff asserts that because there has already been a finding by the district court that the police had no legal basis to arrest Mr. Barnes, the defendants should be collaterally estopped in this case from arguing that legal justification existed to arrest Mr. Barnes.

Based on Maryland law which has addressed this issue, the Court finds that Plaintiff is not entitled to summary judgment on his false arrest claim based on the doctrine of collateral estoppel. Defendants direct the Court to *Savage v. Mayor and City Council of Salisbury*, No. 08-3200, 2010 WL 3038953 (Jul. 30, 2010) which presents similar facts to the case at bar. In *Savage*, the plaintiff brought suit against the City of Salisbury, Maryland, the Salisbury Police

Department, and nine Salisbury police officers, alleging several common law and constitutional torts arising out of an unlawful arrest. During the state court hearing on the plaintiff's criminal charges, the Circuit Court found that the officers who had detained the plaintiff did not have reasonable suspicion to stop him and suppressed evidence of the drugs that were found on the plaintiff during the illegal seizure. *Id.* at *2. However, the Court found that the officers had probable cause to arrest the plaintiff because of his assault on the arresting officers. *Id.* A jury ultimately acquitted the Plaintiff on the assault charges. A few months later, the police arrested the plaintiff again for drug possession, assault, and resisting arrest, after stopping him on the suspicion that he was trespassing. In the criminal proceedings that followed, the Circuit Court suppressed evidence of the crack cocaine and marijuana which was found on the plaintiff based on the apparent lack of probable cause to arrest the plaintiff for the alleged trespass that initiated his encounter with the police. *Id.* at *3.

In the defendants' motion for summary judgment, they argued that the state court's determination that the police officers lacked probable cause and reasonable suspicion during both of plaintiff's arrests was not a sufficient basis for collaterally estopping the defendants from arguing that they had probable cause and reasonable suspicion to detain, search, and arrest the plaintiff during these two incidents. *Id.* The Court in *Savage* agreed with the defendants' argument that they were not collaterally estopped from asserting that they had probable cause and reasonable suspicion to institute the search and seizure of the plaintiff during the two events in question. Explaining the application of collateral estoppel, the Court stated, "the doctrine of collateral estoppel, or issue preclusion, prevents parties from repeatedly litigation factual issues that have already been decided. Full faith and credit required 'federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of

the State from which the judgments emerged.'" *Id.* at *4. (internal citations omitted). The lynchpin in the court's decision to accept the defendant's argument that collateral estoppel did not apply was Maryland's requirement that "collateral estoppel may only be asserted against a party to an initial proceeding in which the issue was 'actually litigated and was essential to a valid and final judgment.'" *Id.* Like in the case at bar, the court concluded that "[n]one of the defendant police officers was a party to the criminal litigation against [the plaintiff]." *Id.* The court found that despite the fact that two of the arresting officers testified during the plaintiff's criminal proceedings, "their involvement as witnesses in these proceedings [did] not indicate that they were in privity with the State of Maryland." *Id.* Accordingly, the court declined to allow the plaintiff to estop the defendants from arguing that probable cause existed for his arrest.

In the case *sub judice*, the Court finds the reasoning in *Savage* persuasive. Like in *Savage*, the defendant officers were not parties in the plaintiff's criminal proceedings, nor were they in privity with the County. *Id.* (citing *Hardesty v. Hamburg Tp.* 461 F.3d 646, 651 (6th Cir. 2006) for the proposition that "police officer defendants in a §1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the criminal case."). Therefore, the Court declines to accept Plaintiff's argument that collateral estoppel bars the defendants from asserting that they had legal justification to arrest the plaintiff for disorderly conduct.

As the facts surrounding the plaintiff's arrest for disorderly conduct are still significantly in dispute, the Court does not believe it is appropriate to grant the plaintiff summary judgment on his false arrest claim for disorderly conduct at this juncture. During trial, the factfinder will be the ultimate determiner of whether legal justification existed for Plaintiff's arrest for this charge.

Therefore, summary judgment is **DENIED** to Plaintiff on his false arrest for disorderly conduct claim.

### 3. Resisting Arrest

As an additional basis for asserting that summary judgment on Plaintiff's false arrest claim and malicious prosecution claims is appropriate, plaintiff alleges that there was not a legally adequate basis for arresting the plaintiff for disorderly conduct and assault. Accordingly, Plaintiff reasons, Plaintiff's arrest for resisting arrest was not legally justified because his arrest for disorderly conduct was not lawful. (Doc. No. 48, at 18) (citing *Monk v. State*, 94 Md. App. 738, 742 (1993) for the proposition that resisting arrest is defined as refusing to submit to a lawful arrest). Plaintiff alleges that because his arrest for disorderly conduct and assault were unlawful (based on the officer's lack of probable cause to arrest him) he could not be charged with resisting arrest. The Court has determined that whether probable cause existed to arrest the plaintiff for disorderly conduct and assault is a material dispute of fact that must be resolved at trial. Accordingly, the Court declines to grant summary judgment to the plaintiff on his false arrest claim for the charge of resisting arrest or for his claim of malicious prosecution relating to this charge. For these same reasons, the Court will not grant summary judgment to the plaintiff on his claims for false imprisonment, false arrest, and malicious prosecution related to his arrest for resisting arrest which have been brought under §1983 and the Maryland Declaration of Rights.

### ii. Malicious Prosecution

Plaintiff moves for summary judgment on his claim for malicious prosecution. To prevail on a claim of malicious prosecution, the plaintiff must demonstrate "1) a criminal proceeding instituted or continued by the defendant against the plaintiff; 2) without probable

cause; 3) with malice, or with a motive other than to bring the offender to justice; and 4) termination of the proceedings in favor of the plaintiff." *Heron v. Strader*, 361 Md. 258, 264 (2000).

As plaintiff asserted in support of his argument for summary judgment on his false arrest claims, plaintiff alleges that the arresting officers lacked probable cause to arrest the plaintiff for disorderly conduct or second degree assault and that the arresting officers acted with malice. (Doc. No. 48, at 13). The Court has already addressed the fact that there is a genuine dispute of material fact as to whether the police officers had probable cause to arrest the plaintiff for disorderly conduct and second degree assault.[7] The Court does not feel it necessary to reiterate its conclusion here. As there is a genuine dispute of fact as to whether the defendant officers had probable cause to arrest the plaintiff, the Court declines to grant summary judgment to the plaintiff on his malicious prosecution claim.

### iii. 42 U.S.C. §1983 Claims for False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff moves for summary judgment on his false arrest, false imprisonment, and malicious prosecution claims brought under 42 U.S.C. §1983. Plaintiff acknowledges that the common law forms of these torts are essentially identical to their §1983 equivalents. (Doc. No. 48, at 17) ("The elements of a claim under 42 USC 1983 for false arrest, false imprisonment, and malicious prosecution are essentially identical to the common law firms of those claims."). As the Court has denied summary judgment to Plaintiff on these common law claims *supra*, the Court logically extends its reasoning here, finding that Plaintiff is not entitled to summary

---

[7] For the plaintiff's malicious prosecution claim, to support the contention that the officers who arrested the plaintiff acted without probable cause, the plaintiff asserts the same arguments that he asserted to support his claim for false arrest. Plaintiff states, "As explained previously, no officer learned from either Mr. Colbert (now, Mr. Nicolson) or Mr. Barnes as to who instigated the fight that was allegedly occurring, and Mr. Colbert (now, Mr. Nicholson) did not allege that Mr. Barnes had committed a crime against him. Finally, no statements were given to the police by witnesses as to who started this alleged altercation prior to arresting Mr. Barnes or even after." (Doc. No. 48, at 13-14).

judgment on his claims for false arrest for second degree assault and battery and disorderly conduct, false imprisonment, and malicious prosecution claims brought under §1983.

### iv. Article 24 of the Maryland Constitution Claims for False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiff moves for summary judgment on his false arrest, false imprisonment, and malicious prosecution claims brought under Article 24 of the Maryland Constitution. The fact that the plaintiff has brought these claims under Article 24 of the Maryland Constitution does not change the analysis employed above with respect to these claims. As the Court has analyzed the substance of the plaintiff's claims for false arrest, false imprisonment, and malicious prosecution above and has found that a genuine factual dispute exists as to these claims, the Court will deny summary judgment to the plaintiff on his Article 24 claim for the same reasons discussed above.

### v. Excessive Force Claim under 42 U.S.C. §1983 and the Maryland Declaration of Rights

Plaintiff contends that he is entitled to summary judgment on his excessive force claim under 42 U.S.C. §1983 and Article 24 of the Maryland Constitution. According to Plaintiff, there is no dispute of fact that since the plaintiff was not being lawfully arrested, the use of a taser on him during his arrest constituted excessive force. (Doc. No. 48, at 21). ("[T]he arrest of Mr. Barnes for assault, disorderly conduct, and resisting arrest was illegal. Because the arrest in the first instance was impermissible, any use of force in effecting that arrest was 'unnecessary' and therefore violated the Due Process Clause.") The Court that already concluded that there are genuine factual disputes surrounding the lawfulness of plaintiff's arrest for assault, disorderly conduct, and resisting arrest. Therefore, Plaintiff's argument that the use of force against him during an unlawful arrest constituted excessive force is unavailing.

Moreover, as the Court indicated in the March 14, 2010 hearing held on Defendant's Motion to Dismiss, Article 24 of the Maryland Constitution is not the proper vehicle under which to bring an excessive force claim arising out of an arrest. It has been clearly established that Article 24 protects the same rights as the Fourteenth Amendment, and Article 26 protects the same rights as those protected under the Fourth Amendment. *See Hayes v. City of Seat Pleasant*, 2010 WL 3703291, at *4 (D. Md. Sept. 16, 2010) ("Article 24 protects substantive due process rights, while Article 26 protects the right to be free from unreasonable searches and seizures; courts therefore construe the provisions *in pari materia* with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively."); *See also* Cortez v. Prince George's County Maryland, 31 Fed.Appx. 123, 130 (4th Cir. 2002); *Braun v. Maynard*, 2010 WL 1375172 (D. Md. Mar. 31, 2010)**.** While the Court recognizes *Okwa* and *Tavakoli-Nouri's* holdings that excessive force claims can give rise to an Article 24 violation, the Court believes that more recent holdings from this district support a finding that excessive force claims arising in the context of an arrest are guided by a Fourth Amendment analysis, and hence, claims for excessive force arising during an arrest give rise to an Article 26 violation and not an article 24 violation. *See Hayes, at* *4 ("Today we make explicit what was implicit in *Garner's* analysis, and hold that all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). Therefore, Plaintiffs claims for violations under Article 24 of the

Maryland Declaration of Rights, which arise from his arrest solely support a violation of Article 26 of the Maryland Declaration of Rights.   Accordingly, any claims brought under Article 24 of the Maryland Declaration of Rights for the excessive force arising out of the plaintiff's arrest will be denied.

### vi.  Battery

Plaintiff argues that he is entitled to summary judgment on his claim for battery, positing that "because the arrest of Mr. Barnes for assault and battery and disorderly conduct was illegal in the first instance, Officer Moss committed a battery by utilizing a taser on him during his arrest." (Doc. No. 48, at 22).  As the Court has articulated several times in this Opinion, there is a genuine dispute as to whether the arrest of the plaintiff was illegal.  As such, the Court declines to find as a matter of law that the use of force that the police effectuated upon the plaintiff equated to a battery.   In sum, summary judgment is denied to the plaintiff on his battery claim.

### CONCLUSION

For the reasons stated above**,** Defendants' Motion for Summary Judgment is **GRANTED**, with the result that Count VIII for Abuse of Process is **DISMISSED**.   Plaintiff's Cross Motion for Summary Judgment is **DENIED**.  Additionally, Plaintiff's claim for excessive force brought pursuant to Article 24 of the Maryland Constitution is **DISMISSED**.  The following claims remain in this case: Count I against Officers Lagos and Wyzga (False Arrest and Malicious Prosecution under §1983); Count II against Defendant Moss  (Excessive Force under §1983); Count III against Defendants Wyzga and Lagos (Malicious Prosecution); Count IV against Defendants Wyzga and Lagos (False Imprisonment); Count V against Defendants Wyzga and Lagos (False Arrest); Count VI against Defendant Moss (Battery); and Count VII against Defendants Wyzga and Lagos (Violations of the Maryland Declaration of Rights).  An

Order consistent with this Opinion will follow.  The Court will proceed to set this matter in for trial.


Date:  <u>July 18, 2011</u>                                        _____/s/_____
                                                                                    Alexander Williams, Jr.
                                                                                    United States District Court